**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **PETER CZYSZCZON**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09 C 4770 |
| | ) |
| **UNIVERSAL LIGHTING** | ) |
| **TECHNOLOGIES, INC.**, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Peter Czyszczon ("Czyszczon") has sued Universal Lighting Technologies, Inc. ("Universal") and 2601-2607 W. 22nd St., LLC d/b/a Oak Brook Office Pavilion ("Pavilion"), charging in Complaint Count I that his fall from a ladder was caused by an electrical shock from a defective ballast designed and manufactured by Universal and in Count II that Pavilion, the owner of the property where Czyszczon was injured, failed to maintain its premises in a reasonably safe condition. Universal has filed a motion for summary judgment on Count I under Fed. R. Civ. P. ("Rule") 56.[1] For the reasons stated here, the motion is granted.

**Summary Judgment Standard**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue

---

[1] LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to Universal's LR 56.1 statement as "U. St. ¶--." Citations to Universal's and Czyszczon's memoranda take the forms "U. Mem. --" and "C. Mem. --" respectively, and citations to Universal's and Czyszczon's supplemental memoranda take the forms "U. S. Mem. --" and "C. S. Mem. --" respectively. Finally, the Amended Complaint is cited "AC ¶--."

of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).[2] For that purpose courts consider the entire evidentiary record and must view all of the evidence and draw all inferences from that evidence in the light most favorable to the nonmovant (Egan Marine Corp. v. Great Am. Ins. Co. of N.Y., 665 F.3d 800, 811 (7th Cir. 2011)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Carmichael v. Vill. of Palatine, 605 F.3d 451, 460 (7th Cir. 2010), quoting Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)). As Payne v. Pauley, 337 F.3d 767, 772-73 (7th Cir. 2003) has explained:

> [T]he Federal Rules of Civil procedure require the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Conclusory allegations, unsupported by specific facts, will not suffice.[3]

Ultimately summary judgment is warranted only if a reasonable jury could not return a

---

[2] At the summary judgment stage, of course, nonmovant Czyszczon need not "establish" or "show" or "prove" anything, but must merely demonstrate that a genuine issue of material fact exists. This opinion's later employment of those quoted terms is due to the cited cases' use of that terminology, but this Court imposes on Czyszczon the lesser burden described earlier in this footnote.

[3] [Footnote by this Court] Lawyers (and regrettably judges) often lump "self-serving affidavits" into the category of submissions that are insufficient to overcome summary judgment. That blanket assertion is incorrect. Payne, 337 F.3d at 773 was careful to distinguish conclusory affidavits from merely self-serving ones:

> We hope this discussion lays to rest the misconception that evidence presented in a "self-serving" affidavit is never sufficient to thwart a summary judgment motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment -- including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial -- a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.

verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the relevant facts, viewed of course in the light most favorable to nonmovant Czyszczon.

## Factual Background[4]

Czyszczon contends that on September 24, 2008, while installing into a light fixture a new ballast designed and manufactured by Universal, he received an electrical shock that caused him to fall from his ladder and sustain injury (AC ¶¶2, 5). He testified that he did not know if the ballast had anything to do with the incident and that he received the shock when he touched another component of the light fixture that is not designed or manufactured by Universal (U. St. ¶¶3-4).

Czyszczon retained opinion witness Robert Quinn ("Quinn"), who testified in part in his deposition that he "can't even say it is more likely than not" that a defect in the ballast caused Czyszczon's injuries and that "we don't know what shocked him" (U. St. ¶7; Quinn Dep. 75). Quinn further admitted that there were many possibilities as to what shocked Czyszczon, including the ballast, the fixture itself, the wiring, the mogul and uncovered wire taps, and that he could not say which of those was the most likely source (id.). When Quinn was asked whether he had "an opinion as to a reasonable degree of scientific certainty as to what part of the fixture as a whole or component of the fixture that Mr. Czyszczon touched to become shocked," he replied that there is no way to know for sure (U. St. ¶9). But he later testified that although the cause of the shock was undetermined, in all events it did occur in the ballast (Quinn Dep. 103).

---

[4] This Court will not credit facts asserted by any party where the cited portion of the record does not support the asserted fact or where no part of the record is cited in support.

Whether the circuit was tripped after the accident is contested.

Although there was damage to the transformer in the ballast that is consistent with a manufacturing defect, Quinn opined that the "damage and the shock may not be related" (Quinn Dep. 79, 81). At one point in his deposition Quinn testified that there was "[p]erhaps a 51 percent chance" that electricity flowed from an arc event inside the primary in the ballast into the core and ultimately into Czyszczon, but he later stated that route "is not likely, no" (id. 66, 74).

Grounding of light fixtures prevents electrical shocks by providing a path for any stray current into the earth rather than into a nearby person (Quinn Dep. 12). Ballasts are normally grounded to the fixture by bolting them into the fixture's case with metal screws that are connected to the grounded conduit system of the building (id. 15). Electrical shocks can occur only where the path through the person receiving the shock provides less resistance than the path into the earth (id. 22-23).

Quinn testified that the fixture Czyszczon was working on was grounded, but he did not measure the resistance of the grounding (Quinn Dep. 13, 23). Universal's designated opinion witness David Powell ("Powell") measured the resistance between the fixture and the building ground and concluded that the fixture was "very well grounded" because the resistance was very low, ranging from 0.18 to 0.28 ohms (U. St. Ex. 9 at 12). It appears that no one attempted to measure the resistance of the path through Czyszczon.

When asked how a grounded fixture could have shocked Czyszczon, Quinn testified that a shock could still occur if the core of the light fixture became energized and Czyszczon touched it while some other part of his body was in contact with a grounded metal surface (Quinn Dep. 68). Powell's report also identified two scenarios in which a shock could occur -- one in

which the fixture was not properly grounded and a second that "involves only two necessary steps or components":  (1) an exposed energized conductor (2) that the victim touched while also touching a grounded surface (U. St. Ex. 9 at 2).

### Daubert-Kumho Challenge[5]

Admissibility of opinion testimony is governed by a two-step test (Chapman v. Maytag Corp., 297 F.3d 682, 686-87 (7th Cir. 2002)).  First, the court must determine that "the reasoning or methodology underlying the testimony is scientifically valid" (Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592-93 (1993)), which requires that the testimony cannot be based on "subjective belief or unsupported speculation" (Chapman, 297 F.3d at 687).  Second, the testimony must assist the factfinder in understanding evidence or determining a fact in issue (id.).

Although a court must view all of the evidence and draw all inferences from that evidence in the light most favorable to the nonmovant in the summary judgment context (Egan, 665 F.3d at 811), the nonmovant cannot rely on a mere "bottom line" conclusion from an opinion witness (Minix v. Canarecci, 597 F.3d 824, 835 (7th Cir. 2010)).  Opinion testimony must be excluded if the witness does not "explain the methodologies and principles supporting the opinion" (id.).  In other words, an opinion witness may not offer an ultimate conclusion without explanation or one that is unsupported by his or her preceding testimony.  If the witness' testimony supports one conclusion but he or she nevertheless reaches the opposite final determination, it cannot be

---

[5] Although it has become common practice to label the principles governing testimony by opinion witnesses by referring to the seminal decision in the Daubert case cited in the next paragraph of the text, the more precise referent is Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) -- see the Note of the Advisory Committee to the 2000 amendment to Fed. R. Evid. ("Evid. Rule") 702, which this Court was privileged to co-author while a member of the Advisory Committee and which (in that Note's pre-final-adoption version) Kumho, id. at 156-57 cited with approval.

considered admissible under Minix. That is true not only of scientific testimony but also of "technical" and "other specialized" knowledge (Kumho, 526 U.S. at 147).

Initially Daubert set forth a nonexclusive list of factors to be considered in determining whether opinion testimony is sufficiently reliable, including "(1) whether the theory can and has been verified by the scientific method through testing; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error; and (4) the general acceptance of the theory in the scientific community" (Chapman, 297 F.3d at 687, relying on Daubert). But in the case of engineering testimony, a court may utilize any of the Daubert factors to the extent they are applicable, but it need not consider them otherwise (Kumho, 526 U.S. at 150-51).[6] Kumho, id at 150 teaches that "the relevant reliability concerns may focus upon personal knowledge or experience" rather than the Daubert factors.

Universal argues that Quinn's opinion about what caused the electrical shock is inadmissible under Evid. Rule 702 because it has no reliable factual or scientific foundation (U. S. Mem. 2). Specifically, Universal complains that Quinn cannot explain (1) how a grounded fixture shocked Czyszczon, (2) what path the current took or (3) how the ballast allegedly caused the shock (id.).

In support of its argument as to grounding, Universal relies on Chapman, 297 F.3d at 687, where the opinion witness concluded that insulation on a wire became compromised and allowed a fatal amount of electricity to "leak through" without tripping the circuit breaker, thereby causing electrocution despite being grounded. There Maytag argued that the witness was not

---

[6] For example, "peer review" is an unlikely (or nonexistent) part of the analysis where articles in professional journals are not a normal component of a field of activity (unlike, say, the presence of medical journals).

qualified to opine on the matter because he had insufficient knowledge and experience in the field, lacked graduate training in electrical engineering, had not attended classes or seminars on the subject, had never published or lectured in the field, had never testified on electrical engineering issues, offered no study or writing to back up his theory, "could not substantiate his opinion that it is even possible for a fatal amount of electrical current to 'leak through' the insulation to an uninsulated surface without tripping the circuit breaker" and did not conduct any tests or experiments to arrive at his conclusions (id.). Chapman, id. at 688 held that the testimony should have been excluded because of the lack of testing and because the witness' theory was unsupported by any writings or data in the field of electrical engineering.

By contrast, here no aspersions have been cast on Quinn's underlying qualifications to opine on electrical issues. Moreover, Quinn's theory of how a grounded fixture could produce a shock does not appear to be novel or unsupported. Quinn explained exactly how such a scenario could occur, and his explanation mirrored that provided by Universal's own opinion witness -- whose qualifications Universal can hardly question (Quinn Dep. 68 and U. St. Ex. 9 at 2). Both witnesses opined that a shock is possible where a person comes into contact with an energized conductor and a different grounded object at the same time, which they contrasted with a situation where a fixture is not properly grounded and therefore causes a shock (id.). Universal did question how such a scenario could have unfolded without tripping the fixture's circuit breaker, but a witness who was present at the time of the accident testified that the circuit was tripped (Casey Czyszczon Dep. 60).

Universal's arguments as to Quinn's inability to explain reliably what path the current took and how (or even if) the ballast caused the shock are far more persuasive. It is undisputed

that Quinn testified: (1) he could not say whether it was more likely or not that the ballast caused the shock, (2) no one knows what caused the shock, (3) there are many possibilities as to what caused the shock and it is impossible to say which possibility is more likely, (4) any damage to the ballast may be unrelated to the shock and (5) it is not likely that electricity flowed from an arc event inside the primary in the ballast into the core and ultimately into Czyszczon (U. St. ¶¶7, 9; Quinn Dep. 74, 75, 79, 81).

Given that testimony, Quinn's ultimate conclusion to the contrary -- that the cause of the shock was undetermined but did occur in the ballast (Quinn Dep. 103) -- is the precise type of "bottom line" statement that <u>Minix</u>, 597 F.3d at 835 held insufficient. At best, Quinn has badly and inexplicably contradicted himself, and such testimony cannot possibly assist the factfinder to understand evidence or determine a fact in issue, as <u>Chapman</u>, 297 F.3d at 687 requires for such opinion testimony to be admissible.

**Causation**

Under Illinois law, both negligence and product liability claims require the plaintiff to show "a proximate causal relationship between the act or omission of the defendant and the damages which the plaintiff has suffered" (<u>Lewis v. Lead Indus. Ass'n, Inc.</u>, 342 Ill. App. 3d 95, 102, 793 N.E.2d 869, 874 (1st Dist. 2003)). Conjecture or speculation are not enough (<u>id.</u>). Where a defendant's act or omission is only one of several possible causes of a plaintiff's injury, plaintiff's claim must fail (<u>Tiffin v. Great Atl. & Pac. Tea Co.</u>, 18 Ill.2d 48, 60-61, 162 N.E.2d 406, 413 (1959)). Failure to present evidence supporting the material allegations of the claim entitles defendant to summary judgment (<u>Gov'tal Interins. Exchange v. Judge</u>, 221 Ill.2d 195, 215, 850 N.E. 2d 183, 195 (2006)).

As in <u>Tiffin</u>, even if Quinn's opinion testimony were admissible it would show only that defendant's ballast <u>could</u> have been the cause of Czyszczon's injury-- but Quinn has admitted that he does not know the cause of the shock and that there are many other possibilities. That alone would doom Czyszczon's claim against Universal. But because this opinion has already found Quinn's testimony to be inadmissible in any event, Czyszczon is without any evidence whatever pertaining to causation. Again Universal is clearly entitled to summary judgment.

**Conclusion**

With no genuine issue of material fact having been identified, Universal's motion is granted. And because no request for a Rule 54(b) determination has been tendered by either party, this opinion has been deliberately silent on that subject. If Universal wishes to be dropped as a party to this action now, it should move for such a determination.

Relatedly, it is unclear just what impact the decision here has on Czyszczon's Count II claim against Pavilion. This action is set for a status hearing at 9 a.m. July 30, 2012 to discuss the future course of this litigation.

                                               Milton I. Shadur
                                               Senior United States District Judge

Date: July 17, 2012.